665 P.2d 657

David Harold BROWN and Debbie
Brown, husband and wife,
Plaintiffs-Respondents,

v.

JERRY'S WELDING AND CONSTRUC-
TION COMPANY, Douglas Crane and
Lewis Larsen, Defendants-Appellants.

No. 13935.

Supreme Court of Idaho.

June 10, 1983.

James B. Green, Pocatello, for defendants-appellants.

Louis F. Racine, Jr., of Racine, Huntley, Olson, Nye & Cooper, Pocatello, and Roger D. Cox, of Cox and Ohman, Chartered, Idaho Falls, for plaintiffs-respondents.

DONALDSON, Chief Justice.

David Brown, plaintiff-respondent, was injured on August 2, 1974, while employed by Agricultural Products Corporation, Inc. (APC). On that date, appellants Douglas Crane and Lewis Larsen, who were on the payroll of the appellant Jerry's Welding, were lowering an air compressor out of a window in APC's ball mill plant. By reason of causation not germane to this appeal, the compressor fell and struck Brown rendering him a paraplegic.

As a result of this accident, two lawsuits were filed. The first was subject to appeal before this Court in *Scott v. Agricultural Products Corporation, Inc.,* 102 Idaho 147, 627 P.2d 326 (1981). The second, a personal injury action, was filed by David Brown and his wife against Jerry's Welding, Crane and Larsen. Following trial to a jury which responded to special interrogatories, judgment on the verdict was entered in favor of the plaintiffs. The jury found that Crane, Larsen, and APC were guilty of negligence which was the proximate cause of the accident and that Crane and Larsen were not the special or loaned employees of APC. The jury apportioned the negligence between Crane (42.5%), Larsen (42.5%), and APC (15%) and awarded damages to David Brown and his wife in the amounts of $1,075,814.65 and $50,000.00 respectively.

Jerry's Welding furnished Crane and Larsen to APC to work pursuant to an agreement between the two corporations. Crane and Larsen worked at the APC plant in a three-man maintenance crew with an APC employee. The controversy revolves about the status of Crane and Larsen-whether they were the special or loaned employees of APC or were they the employees of Jerry's Welding when the accident occurred.

Defendants-appellants appeal from the judgment on the verdict and the denials of several motions. We affirm.

I.

Appellants based their defense on the loaned employee doctrine which first arose in Idaho in *Pinson v. Minidoka County Highway District,* 61 Idaho 731, 106 P.2d 1020 (1940). Appellants present arguments that there is no substantial, competent evidence to support the jury's determination that Crane and Larsen were not the loaned employees of the plaintiff's employer, APC. We disagree.

The *Pinson* Court established a rule relating to whether an employer has become a temporary employer:

"[T]he identity of the person who pays compensation is not controlling, and is not a circumstance which is decisive or determinative of the question whether a person to whom an employee is lent becomes his employer. [Citations omitted.] The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee, and where the employee comes under the direction and control of the person to whom his services have been furnished, the latter becomes his temporary employer, and liable for compensation." *Id.* at 737, 106 P.2d at 1022.

Pinson, a paid employee of the United States Reclamation Service, was directed to work under the direction of the highway engineer of the Minidoka Highway District on a highway within that district. As a result of an accident which occurred during his work on the highway, Pinson died and later a claim was made for workmen's compensation benefits by his dependents. An award was made by reason of his death from injuries received by accident arising out of employment by the Minidoka Highway District. On appeal, this Court affirmed the award after considering the law

with respect to whether Pinson was an employee of the highway district. The *Pinson* Court held that the highway district "became his temporary employer and liable for compensation under the Workmen's Compensation Act. (I.C.A., sec. 43–1001.)" *Id.* at 737–38, 106 P.2d at 1022.

In other cases, this Court has considered whether a worker's status is as an employee or an independent contractor. *See, e.g., Ford v. Bonner County School District,* 101 Idaho 320, 612 P.2d 557 (1980); *Anderson v. Gailey,* 97 Idaho 813, 555 P.2d 144 (1976); *cf. Tucker v. Union Oil Co. of California,* 100 Idaho 590, 603 P.2d 156 (1979) (statutory employer status considered). We have looked to the right to control test—the status of the worker is a question of fact which must be determined from the particular facts and inferences to be drawn in each case. *See Ford v. Bonner County School District, supra; cf. Marsh v. Tilley Steel Co.,* 26 Cal.3d 486, 162 Cal.Rptr. 320, 606 P.2d 355 (Cal.1980) (determination of worker status). Our appellate standard when reviewing a denial of a motion for directed verdict or when reviewing a jury's verdict on a motion for judgment n.o.v. is the same. *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974). We examine the record in a light most favorable to the nonmoving party and determine whether there is substantial, competent evidence to support a verdict for the nonmoving party and whether as a matter of law it can be affirmed. *Id.* The evidence need not be uncontradicted, but substantial; we look for evidence of sufficient quantity and probative value that reasonable minds could conclude that a verdict was proper. *See id.* at 736, 518 P.2d at 1198.

There was substantial, competent evidence supporting the jury's determination that Crane and Larsen were not the loaned employees of APC: (1) Crane and Larsen were furnished to APC by Jerry's Welding pursuant to contract which provided that Jerry's Welding would receive from APC payment equal to the wages paid the workers supplied by Jerry's Welding plus 28% for profit and overhead; (2) Crane and Larsen were on the Jerry's Welding payroll; (3) Crane and Larsen were covered by workmen's compensation by Jerry's Welding; (4) Jerry's Welding had liability insurance coverage on Crane and Larsen; (5) Crane and Larsen wore hard hats supplied by Jerry's Welding; (6) Crane and Larsen were alone at the time of the accident which injured Brown; (7) APC could not unconditionally fire Crane and Larsen from Jerry's Welding's payroll, although APC could reject Crane and Larsen and send them back to Jerry's Welding; (8) APC did not hire Crane and Larsen directly; (9) Jerry's Welding retained the exclusive right to send other workers in place of Crane and Larsen; and (10) the price for Crane and Larsen's services was negotiated by APC with Jerry's Welding.

A motion for a new trial is directed at the trial court's discretion and our review is limited to determine whether that discretion has been abused. *See, e.g., Luther v. Howland,* 101 Idaho 373, 613 P.2d 666 (1980); *Stoddard v. Nelson,* 99 Idaho 293, 581 P.2d 339 (1978); *Mann v. Safeway Stores, Inc., supra.* We find no abuse of discretion in this case.

## II.

■ Appellants argue that the trial court erred in instructing the jury as to the doctrine of loaned servants and in not giving certain requested instructions. Both parties requested the trial court to instruct the jury as to factors to be considered relating to the loaned employee issue. The trial court refused the appellants' proposed instructions on the loaned employee doctrine and drafted and gave Jury Instruction No. 12 which we see as fairly stating the law without undue comment on the evidence.[1]

1. Jury Instruction No. 12 read as follows:
   "You are instructed that in determining whether defendants Crane and Larsen were special or loaned employees to APC, you are to apply the 'control test.' Under that test, an employee is in the service of another when that other has the right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not. Factors you

The instruction provided proper guidance and did not limit the jury to considering only those factors set forth. Our review of the instruction given by the trial court on loaned employees reveals no reversible error. It presented an adequate statement of the law with respect to the loaned employee doctrine and how to determine whether a worker has the status of being a loaned employee. We find no error and their requested instructions were properly refused.

### III.

Appellants' next argument concerns the admission into evidence of a certificate of insurance. The insurance certificate reflected that Jerry's Welding possessed workmen's compensation and liability insurance coverage. Appellants contend that the trial court erred in admitting the certificate over objection that there was no foundation for its admission, that it was irrelevant to the issues, and that its probative value was outweighed by its prejudicial effect.

■ The general rule in Idaho is that evidence of insurance is inadmissible at trial to prove negligence. *See Crossler v. Safeway Stores, Inc.,* 51 Idaho 413, 6 P.2d 151 (1931). However, evidence of insurance has been admitted where relevant to other issues. *Tucker v. Union Oil Co. of California,* 100 Idaho 590, 603 P.2d 156 (1979) (evidence of insurance relevant to other material issues); *see Curtis v. Ficken,* 52 Idaho 426, 16 P.2d 977 (1932) (to show the interest or bias of a witness).

■ In *Tucker* we stated with respect to "right to control" that:

"Another element to be considered is the source of the payment of workmen's compensation premiums. Commonly, the statutory employer pays the premiums covering his employees, since it is the employer's legal responsibility to insure that his employees are covered by workmen's compensation insurance." *Id.* 100 Idaho at 594, 603 P.2d at 160.

The evidence of insurance was relevant to the loaned employee issue and its admission was therefore not error.

We acknowledge that an examination of the record at the time that the certificate was offered into evidence would arguably support a question as to its relevance. However, the subsequent proceedings adequately demonstrated its relevance. The jury was properly instructed that the evidence of insurance was limited to

"the *singular purpose* of helping you [the jury] decide if Messers. Crane and Larsen were loaned employees of Agricultural Products Corporation at the time of Mr. Brown's accident. *Such evidence cannot be considered by you for any other purpose.* In addition, such evidence is only one of many factors this Court has instructed you to consider in finding whether or not Messers. Crane and Larsen were loaned employees of Agricultural Products Corporation at the time of Mr. Brown's accident." (Emphasis added.)

The trial court is vested with discretion in the admission of evidence, the trial court weighs the probative value of the proffered evidence against its potential prejudicial impact. *See Stoddard v. Nelson,* 99 Idaho 293, 581 P.2d 339 (1978). We find no abuse of that discretion in the admission of the certificate of insurance in light of a proper limiting instruction such as was given here.

### IV.

■ Appellants argue that the trial court erred in allowing over objection expert tes-

may consider among others in making this determination are:
(1) Who made payment of wages and benefits;
(2) Who had the right to hire and fire;
(3) The nature of the services, that is, skilled or unskilled;
(4) Whether the work performed for the alleged special employer is a part of his regular business;
(5) The duration of the employment period;

(6) Who supplies the work tools;
(7) Who has the right to control and supervise the details of the work to be performed;
(8) Whose business is being furthered by the work being performed.

"By answer to a special interrogatory, you will indicate whether defendants Crane and Larsen were special or loaned employees to APC at the time plaintiff David Brown was injured."

timony by an economist as to the plaintiff's future wage loss. The argument is that the economist did not take into consideration the plaintiff's prior work history, military history, length of time worked or wages received by the plaintiff during the four years preceding the accident.

■ The admission of expert testimony is within the trial court's discretion and absent a showing of abuse of discretion we will not disturb its exercise. *See Potter v. Mulberry,* 100 Idaho 429, 599 P.2d 1000 (1979). The appellants requested that the trial court consider remittitur based on the prejudicial influence of the economist's testimony. While it was proper for the appellants to make such a request of the trial court, only rarely will this Court exercise its power with respect to an argument that the awarded quantum of damages is excessive. *See Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). We decline to disturb the denial of the motion for new trial on this ground.

### V.

An additional issue raised by respondent on appeal has to do with statutory changes in the rate of interest on the judgment during appeal. The final judgment from the district court reflects that the judgment will bear interest at 8% per annum based on I.C. § 28–22–104. We note the evolution of I.C. § 28–22–104 during the time of this appeal. Interest on the judgment should reflect the various amendments. *See Ramsey v. Ramsey,* 96 Idaho 672, 679, 535 P.2d 53, 60 (1975).

Affirmed.

SHEPARD, BAKES and BISTLINE, JJ., and WALTERS, J., Pro Tem., concur.