599 P.2d 1012

**Ronald D. OWEN and Elizabeth F. Owen, husband and wife, Plaintiffs-Respondents,**

**v.**

**Susan Keller BURCHAM and Roy Burcham, Defendants-Appellants.**

**No. 12846.**

Supreme Court of Idaho.

Sept. 13, 1979.

Jeremiah A. Quane of Quane, Smith, Howard & Hull, Boise, for defendants-appellants.

John C. Hepworth of Hepworth, Nungester & Felton, Buhl, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiffs-respondents for the wrongful death of their son resulting from a motor vehicle-bicycle accident. We affirm.

Defendants-appellants first assign error to the refusal of the trial court to give certain requested instructions. The substance of the defendants' proposed instructions was adequately covered elsewhere and, hence, the trial court did not err in refusing defendants' proposed instructions. *E. g., Meissner v. Smith*, 94 Idaho 563, 494 P.2d 567 (1972).

Appellants' next assignment of error relates to the trial court's allowance of voir dire examination of jurors respecting the subject of insurance. Our examination of the record reveals that counsel for plaintiffs did repeatedly inquire of any jurors' relationship with casualty insurance companies. The scope of voir dire examination of jurors as to their qualifications is a matter lying within the sound discretion of the trial court. *Towne v. Northwestern Mut. Life Ins. Co.*, 58 Idaho 83, 70 P.2d 364 (1937); G. Bell, Handbook on Evidence for the Idaho Lawyer 9 (2d ed. 1972). Here, prospective jurors were asked in substance whether he or she, or any member of his or her family, was employed by or owned stock in a casualty company. We have held that such inquiry is permissible if made in good faith with the intent to expose bias and not for the purpose of informing the jury about the existence of the defendant's insurance. *Byington v. Horton*, 61 Idaho 389, 102 P.2d 652 (1940); *Shaddy v. Daley*, 58 Idaho 536, 76 P.2d 279 (1938). The record does not reveal any indication of bad faith on the part of plaintiffs' counsel and, hence, we find no prejudicial error.

Appellants next assign error to the ruling of the trial court at the time the defendants-appellants offered as evidence a report prepared by one Officer Sweesy of his investigation of the accident. Sweesy was present and testified at trial and counsel for defendants-appellants was granted great leeway in using Sweesy's official accident report to refresh Sweesy's recollection. However, the trial court denied admission of Sweesy's official report pursuant to I.C. § 49–1511. That statute is part of the motor vehicle safety responsibility act and provides:

"49–1511. *Matters not to be evidenced in civil suits.*—Neither the report required by section 49–1504, Idaho Code, the action taken by the director pursuant to this act, the findings, if any, of the director upon which such action is based, nor the security filed as provided in this act shall be referred to in any way, nor be any evidence of the negligence or due care of either party, at the trial of any action at law to recover damages."

Defendants-appellants rely exclusively upon *Bell v. O'Connor Transp. Ltd.*, 94 Idaho 406, 489 P.2d 439 (1971), which held that a police officer's investigative accident report was admissible into evidence under I.C. § 9–316 as an official report made within the scope of the official duties of an officer of the State. We note that the court in *Bell v. O'Connor Transp. Ltd.*, *supra*, inexplicably failed to consider the impact of I.C. § 49–1511, and, therefore, we are required herein to analyze the conflict between the two said statutes. I.C. § 9–316 was enacted by our legislature in 1939, whereas I.C. § 49–1511 was enacted in 1947, and amended as late as 1974. As a general rule, to the extent an earlier expression of the legislature is contradicted by a subsequent one, the latest expression of the legislative will should control. *See Employment Security Agency v. Joint Class "A" School Dist. No. 151*, 88 Idaho 384, 400 P.2d 377 (1965). In construing these statutes, we note, also, that I.C. § 9–316 appears to be a statute general in nature, while I.C. § 49–1511 relates specifically to investigative reports filed as a result of motor vehicle accidents. In such circumstances, where both a general statute and a special or specific statute deal with the same subject matter, the provisions of the special or specific statute will control those of the general statute. *Hook v. Horner*, 95 Idaho 657, 517 P.2d 554 (1973); *State v. Roderick*, 85 Idaho 80, 375 P.2d 1005 (1962).

We conclude, therefore, that the intent of our legislature in the enactment of I.C. § 49–1511 was to restrict the utilization of reports of investigating officers following motor vehicle accidents. While the

report of an investigating officer may contain valuable information regarding the physical evidence observed by the officer at the scene, it may also contain extensive hearsay from non-party witnesses, conclusions and speculations of the officer, criminal charges made which may or may not have been sustained. The report may also contain other materials that may be unreliable, inadmissible, or, at best, hearsay not susceptible to the fire of cross-examination. Hence, to the extent that *Bell* authorized the actual admission of an accident report as substantive evidence, it is overruled. *Bell* also stated, however, that an accident report "may be used by the officer to refresh his recollection." *Bell v. O'Connor Transp. Ltd.*, 94 Idaho at 408, 489 P.2d at 441. And we find that rule to be salutary in its effect.

 The admissibility or inadmissibility of a document does not affect its availability for use in refreshing a witness' memory. *See Prudential Ins. Co. of America v. Folsom*, 48 Idaho 538, 283 P. 609 (1929); G. Bell, Handbook of Evidence for the Idaho Lawyer 32 (2d ed. 1972). Ordinarily, memoranda for refreshing memory do not constitute independent evidence, but only aid in the giving of evidence. McCormick on Evidence § 9 (2d ed. 1972). We see no public policy to be served by depriving law enforcement officers of the opportunity of refreshing their memory in the recollection of events that occurred some substantial period of time prior to their appearance at trial. We conclude, therefore, that the trial court properly denied admission of the accident report as substantive evidence, while nevertheless permitting its utilization to refresh the memory of the investigative officer.

We turn now to the subject matter of defendants-appellants' principal assertions of error, *i. e.*, the trial court's holding at the close of the evidence that the deceased, Randall Owen, was not negligent in respect to his death; the ruling of the trial judge following the jury verdict that he had erred in submitting the issue of the plaintiff-parents' negligence to the jury; and the grant-ing of the motion of the plaintiffs for a judgment notwithstanding the verdict as to the negligence of the plaintiff-parents.

The assignment of error relating to the nonnegligence of the decedent requires an extended review of the facts. At approximately 6:00 p. m., Friday, April 2, 1976, plaintiff-respondent Elizabeth Owen granted her son Randall Owen permission to ride his bicycle along a county road, commonly known as the Castleford Road. His destination was a home two miles distant, where he hoped to sell some Cub Scout tickets. Randall Owen was then eight years and eleven months old. He was told to return home by 7:00 p. m. Mr. and Mrs. Owen had instructed their son Randall to obey the rules of the road in operating his bicycle and he originally was restricted to the block surrounding his home in Castleford. Later, beginning early 1976, if he first sought and obtained permission from either of his parents, he was allowed to ride elsewhere.

At certain times of the year, Castleford Road was used by trucks involved in farming operations. The Owens did not permit their son to ride his bicycle on that road during the fall harvest because of the high density of truck traffic. Since this was spring, however, and the traffic was light to moderate, Randall was given permission to ride along Castleford Road to his destination. Many boys bicycled along that road and it was not unusual to see them there.

Castleford Road runs directly east-west and is some 25 feet wide from pavement edge to pavement edge, and has no marked centerline. On the north edge or righthand side of Castleford Road as one travels west, there existed what was described by various witnesses as a ridge, a groove, a seam, a depression or a ledge located approximately two and one-half feet from the edge of the pavement. That groove of, at most, one-half inch, was apparently a result of the widening of the road in 1974. Approximately one mile from the edge of the city of Castleford, a north-south road intersects Castleford Road. The above noted groove apparently did not exist east of this intersection. The testimony is in conflict as to

**446**

its existence and degree of continuity west of the intersection.

Defendants-appellants, Roy and Susan Burcham, were school teachers in the city of Castleford. Some time after 6:00 p. m., Mr. Burcham, who was at the Castleford school, called his wife and asked her to come into town to pick him up. Mrs. Burcham traveled east on Castleford Road toward town and she noticed Randall Owen, the decedent, riding his bicycle westward on the opposite side of the road. According to her testimony, Randall Owen appeared to be operating his bicycle carefully and properly. Mrs. Burcham reached Castleford, picked up her husband, turned around and headed home in a westerly direction on Castleford Road. The sun was setting in the west on the edge of the horizon directly at the end of Castleford Road and it impaired the vision of vehicle operators traveling westerly. Mrs. Burcham testified that the sun was shining directly in her eyes; that she was not wearing sun glasses; and that the windshield was dusty, thus producing an even greater amount of glare. Mrs. Burcham estimated her speed to be between 50 and 52 miles per hour. Various witnesses testified that although the posted speed limit was 50 miles an hour, that a safe speed upon the highway under those conditions would have been 30 to 35 miles an hour.

Mrs. Burcham testified that approximately one mile out of Castleford at the aforementioned intersection, she saw a semi-truck trailer with two trailers approaching from the west. She testified that she traveled roughly one-quarter mile further and then moved her car toward the right or northern edge of the road and continued in a straight line until, when the truck was slightly west of or perhaps adjacent to her car, she felt her car strike something and saw the boy and his bicycle fly past the passenger side of her vehicle. Mrs. Burcham testified that she did not see the boy prior to striking him. Mr. Burcham testified that he did not see the boy prior to impact nor did he see the truck described by his wife. There were no other witnesses to the accident.

Mrs. Burcham testified to her familiarity with Castleford Road and the "groove" in the pavement. She testified that she was able to feel it if her car crossed that groove and it was her belief that her vehicle tires had not crossed the groove prior to the impact with the decedent's bicycle. She also testified, however, that she was in no position to state where Randall Owen was on the road or how he might have been operating his bicycle. Physical evidence on the Burcham vehicle indicated that the bicycle was struck three to five inches from the far righthand side of the Burcham vehicle. The collision sheared off the left pedal of the bicycle and the boy's left leg was severely broken between the knee and foot. Following the collision, the boy was found on the north side of the road one or two feet off the paved portion of the roadway.

At the close of the testimony, plaintiffs moved the court for a directed verdict with respect to the issue of liability on the ground that as a matter of law no evidence existed by which a reasonable jury could conclude that the plaintiffs or the deceased son were guilty of any negligence that was the proximate cause of the boy's death. That motion was denied. However, before the jury was instructed, the court ruled as a matter of law that the deceased Randall Owen was not negligent. A special verdict form was submitted to the jury containing three questions regarding the existence of causative negligence of the defendant Susan Burcham, plaintiff Elizabeth Owen, and plaintiff Ronald Owen. The jury returned that special verdict form, finding 65% of the causative negligence was attributable to defendants Susan Burcham and Roy Burcham, and assessed plaintiffs Elizabeth Owen and Ronald Owen 17.5% each of the causative negligence for the death of Randall Owen. Thereafter, the trial judge issued a memorandum opinion reiterating and affirming his withdrawal of the issue of the negligence of Randall Owen from the jury and further stated his belief that he had made an error in submitting the issue of the plaintiff parents' negligence to the jury and ruled that as a matter of law any

negligence on their part could not be a proximate cause of the death of the deceased. Thereupon, plaintiffs were granted a motion for judgment notwithstanding the verdict, and judgment was entered in favor of the plaintiffs for the full amount of the damages found in the special verdict, to wit: $65,000, together with costs and attorney's fees. Defendants' motion for a new trial was denied.

The facts, as above recited, excepting that testimony relating to the "groove" in the pavement and its location and size, are largely without conflict. It is that groove and the testimony of Mrs. Burcham that she did not cross that groove which forms the foundation of appellants' argument here that there was sufficient evidence to take the issue of the negligence of Randall Owen to the jury and that the court, therefore, erred in removing the question of the decedent Randall Owen's negligence from the jury.

A child of the age of Randall Owen is capable of negligence. *E. g., Mundy v. Johnson,* 84 Idaho 438, 373 P.2d 755 (1962). Under the facts presented here, the decedent Randall Owen is entitled to a presumption of due care on his part. *See Bradbury v. Voge,* 93 Idaho 360, 461 P.2d 255 (1969); *Haman v. Prudential Ins. Co. of America,* 91 Idaho 19, 415 P.2d 305 (1966). This presumption is more than a procedural device and carries with it actual evidentiary weight. The defendants bore the burden of overcoming that presumption and its evidentiary weight by establishing the negligence of the decedent by a preponderance of the evidence. *Haman v. Prudential Ins. Co. of America, supra.*

On a motion for a directed verdict pursuant to I.R.C.P. 50(a) or for a judgment notwithstanding the verdict pursuant to I.R.C.P. 50(b), the moving party admits the truth of the adverse evidence and every inference which may *legitimately be drawn therefrom. Barlow v. International Harvester Co.,* 95 Idaho 881, 522 P.2d 1102 (1974); *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974). It is improper to grant either motion if there is

substantial evidence to justify submitting the case to the jury or to support the verdict once it is returned. *Barlow v. International Harvester Co., supra; Mann v. Safeway Stores, Inc., supra.* To be "substantial," the evidence need not be uncontradicted. All that is required is that there be evidence of such sufficient quantity and probative value to support the party against whom the motion is directed so that reasonable minds *could* conclude that there is evidence upon which the jury *could* properly find a verdict for that party. *Barlow v. International Harvester Co., supra; Mann v. Safeway Stores, Inc., supra.*

We see a complete lack of any direct evidence which in any way even tends to contradict or overcome the presumption of due care on the part of the decedent Randall Owen. Under the laws of Idaho, every person riding a bicycle upon a roadway is granted all the rights and is subject to all the duties applicable to a driver of a motor vehicle, except as otherwise specifically provided. *Kelley v. Bruch,* 91 Idaho 50, 415 P.2d 693 (1966); I.C. § 49–740. I.C. § 49–743(a) provides:

"49–743. *Riding on roadways and bicycle paths.*—(a) Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction."

It is this statute and the duty imposed upon the decedent Randall Owen to ride his bicycle as near to the right side of the roadway as practicable which is the focus of appellants' argument here. As heretofore stated, there were no eye witnesses to the accident. Both defendants seated in the front seat of the motor vehicle which was approaching Randall Owen from the rear testified that they did not see the boy or his bicycle until after the impact when he flew past the passenger's side of the Burcham vehicle. Mrs. Burcham testified that shortly before the accident, when she had previously passed the decedent Randall Owen, he was riding his bicycle in a careful and prudent manner. The direct evidence indicates

**448**

that Mrs. Burcham drove her vehicle toward the right or northerly side of the pavement allegedly while passing a truck moving in the opposite direction. The impact of the vehicle with the bicycle was close to the extreme right edge of the vehicle and the left pedal of the bicycle was sheared off. After the impact, the boy's body flew past the righthand side of the Burcham's vehicle. We find nothing in that evidence to indicate that the decedent was riding his bicycle other than as near to the right side of the roadway as practicable. Thus, that direct evidence does nothing to overcome or rebut the presumption of due care on the part of the decedent.

Appellants assert, however, that certain legitimate inferences may be drawn from the testimony of Mrs. Burcham, that such inferences could legitimately and reasonably be drawn by the jury who could conclude therefrom that Randall Owen was not as near to the right side of the roadway as practicable.

It is argued by appellants that the testimony of Mrs. Burcham that she did not cross the groove near the edge of Castleford Road would require the inference that her vehicle could not have struck the decedent Randall Owen if he, in fact, were riding as near the right side of the roadway as practicable. Mrs. Burcham testified at length as to her familiarity with the road and the groove in the pavement and based on her knowledge and perceptions, stated her belief that she had not crossed over the groove prior to the impact. While plaintiffs produced contradictory evidence tending to show either that the groove did not exist at the point where Mrs. Burcham stated she drove her car to the right or that she could not have felt it even if it did exist at that point, that evidence by the plaintiffs did not rise to the level of making Mrs. Burcham's story impossible under the immutable laws of physics and nature. The testimony that she did not cross the groove was legitimate and must, therefore, be deemed admitted for the purposes of the motion for directed verdict or a judgment notwithstanding the verdict. *Mann v. Safeway Stores, Inc., supra.*

Appellants further argue that once it is accepted that Mrs. Burcham did not cross the groove, the necessary implication is that the decedent could not have been as near to the righthand side of the road as practicable. That implication, they claim, is an inference sufficient to require the question of the decedent's negligence to be placed before the jury.

There is no sure way to distinguish between a legitimate inference to which a party is entitled and an unreasonable one to which he is not entitled. *Bridges v. Groendyke Transp. Inc.,* 553 F.2d 877 (5th Cir. 1977). It is well established that an inference would be unreasonable if it would permit a jury to base its verdict on mere speculation and conjecture. *Omaha Indian Tribe v. Wilson,* 575 F.2d 620 (8th Cir. 1978); *Ralston Purina Co. v. Hobson,* 554 F.2d 725 (5th Cir. 1977); *Bridges v. Groendyke Transp., Inc., supra; Tyrrell v. Dobbs Inv. Co.,* 337 F.2d 761 (10th Cir. 1964). *See also Erikson v. Nationwide Mut. Ins. Co.,* 97 Idaho 288, 543 P.2d 841 (1975); *Dent v. Hardware Mut. Ins. Co.,* 86 Idaho 427, 388 P.2d 89 (1963). Here, the inference sought by appellants would permit a jury to indulge in speculation and conjecture.

Even if we accept the testimony of Mrs. Burcham as positive evidence that the tires of her vehicle did not cross the groove in the pavement, we would, nevertheless, have to indulge in speculation and conjecture to conclude that solely because of such asserted fact that the decedent was not operating his bicycle as near to the righthand side of the pavement *as practicable.* The width of the pavement between its edge and the groove was only approximately 30 inches. We are not told how far the righthand portion of the car's body would extend beyond the groove if the tires were riding immediately adjacent to the groove. There is no evidence as to whether a bicycle rider would necessarily and reasonably occupy the entire 30 inches between the groove and the edge of the pavement and thus be operating as near to the right side of the roadway *as practicable* or whether some lesser

amount was reasonable and, therefore, *practicable.* The only indications in the testimony are that Mrs. Burcham herself did not know where the boy was in the roadway, that at the alleged approach of the truck she drove her vehicle toward the right side of the roadway, that the impact was close to the right side of the Burcham vehicle's body, that the left pedal of the bicycle was severed, that the boy's left leg was broken, and that the body flew past the righthand side of the Burcham vehicle following the impact.

We agree with the trial court that the inference sought by appellant is simply not sustained by the facts. The facts in the record would equally sustain an inference that the decedent boy was operating his bicycle as near to the righthand edge of the roadway as was practicable. There is, therefore, a lack of substantial evidence or a *legitimate* inference to be drawn from the evidence which rebuts the presumption of due care on the part of the decedent Randall Owen. The trial court correctly withdrew the issue of Randall Owen's alleged negligence from consideration by the jury.

We now turn to appellant's assertion that the trial court erred in granting plaintiffs-respondents a judgment notwithstanding the verdict on the issue of the parents' contributory negligence. The same evaluative standards for assessment of a grant of a directed verdict also apply in assessing the grant of a judgment notwithstanding the verdict. *Barlow v. International Harvester Co., supra; Mann v. Safeway Stores, Inc., supra.* As in other negligence actions, the contributory negligence of a parent must have been a concurrent and *proximate* cause of the injury in order to preclude or reduce recovery. Under the record presented here, we see no negligence on the part of the parents in allowing their son to ride his bicycle on Castleford Road. Even assuming the existence of sufficient evidence of negligence on their part, we nevertheless hold that this is a proper circumstance to invoke the rule that if the child commits no act which would be considered negligent if committed by an adult, then any negligence on the part of the parent in permitting the child to go onto the road would be, at best, a remote cause of the injury, not a proximate cause and not sufficient to preclude or reduce recovery. Annot., 62 A.L.R.3d 541 (1975); 59 Am. Jur.2d *Parent and Child* § 125 (1971), 7 Am.Jur.2d *Automobiles and Highway Traffic* § 429 (1963). The trial court was correct in withdrawing from the jury the issue of the negligence of the deceased Randall Owen, and, hence, it follows that the negligence, if any, of the parents in allowing the deceased to ride his bicycle upon the road was not a proximate cause as a matter of law and, thus, the judgment notwithstanding the verdict was properly granted and is affirmed.

The rulings, orders, and judgment of the trial court were correct and are affirmed. Costs to respondents.

DONALDSON, C. J., BAKES and BISTLINE, JJ., and DUNLAP, J. pro tem., concur.